**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

United States Courts
Southern District of Texas
FILED

DEC - 8 2006

Michael N. Milby, Clerk

| | |
|---|---|
| HARTMAN COMMERCIAL PROPERTIES REIT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALLEN R. HARTMAN and HARTMAN MANAGEMENT, L.P., | ) |
| | ) |
| Defendants. | ) |

# H-06-3897

Case No. _____

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Hartman Commercial Properties REIT, in support of this Complaint against Defendants Allen R. Hartman and Hartman Management, L.P., would show as follows:

### THE PARTIES

1.      Plaintiff Hartman Commercial Properties REIT (the "REIT") is a Maryland real estate investment trust formed under the Maryland REIT law with offices located at 1450 West Sam Houston Parkway N., Suite 111, Houston, Texas 77043.

2.      Defendant Allen R. Hartman ("Hartman") was formerly Chairman of the Board of Trustees and CEO of the REIT. Hartman also has been the sole owner, Chairman, and CEO of Defendant Hartman Management, L.P. Hartman is a resident of Houston, Texas, and may be served with process at his place of business, 1450 West Sam Houston Parkway North, Suite 100, Houston, Texas 77043.

3.      Defendant Hartman Management, L.P. ("Hartman Management") is a Texas limited partnership with offices located in Houston, Texas. Hartman Management may be

served with process through its registered agent, Allen R. Hartman, at his offices located at 1450 West Sam Houston Parkway, North, Suite 100, Houston, Texas 77043.

## JURISDICTION AND VENUE

4.    This Court has exclusive jurisdiction over the subject matter to this action pursuant to 15 U.S.C. § 78aa, because this matter involves violations of the Securities Exchange Act of 1934 and the regulations promulgated thereunder.  The Court thus has federal question jurisdiction under 28 U.S.C. § 1331.

5.    This Court has personal jurisdiction over Hartman because Hartman resides in and regularly transacts business in the State of Texas.  The Court has personal jurisdiction over Hartman Management because Hartman Management is a limited partnership, whose general partner, Hartman, is a Texas resident.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because it is a judicial district where Defendants reside and/or where a substantial part of the events or omissions giving rise to the claims asserted herein occurred.

## SUMMARY OF THIS ACTION

7.    The REIT brings this lawsuit to enjoin ongoing violations of the federal securities laws, particularly, Section 14(a) of the Securities Exchange Act (the "Exchange Act") and Securities Exchange Commission ("SEC") Rules 14a-3 and 14a-9, by Defendants Hartman and Hartman Management.  On October 2, 2006, the Board of Trustees of the REIT removed Hartman as Chairman of the Board and Chief Executive Officer of the REIT.  Hartman and Hartman Management, which is owned and controlled by Hartman, are now engaging in a scheme to remove the REIT's Board of Trustees through an unlawful consent solicitation, in which Hartman purports to solicit the written consent of shareholders pursuant to a Consent

Solicitation Statement (the "Consent Solicitation") and other written materials to replace the Board with a new slate of Trustees including Hartman and five other individuals hand-picked by Hartman.

8.    Under the REIT's Declaration of Trust, the primary corporate instrument governing the REIT under the Maryland REIT law, Trustees may be removed from office only at a meeting of shareholders called for that purpose, and not by written consent.  Therefore, if Hartman sends the consent solicitation, it will falsely lead the REIT's shareholders into believing that the trustees can be removed by written consent.  Hartman thus apparently intends to mail or otherwise disseminate through means and instrumentalities of interstate commerce a false and misleading Consent Solicitation Statement to all shareholders of record of the REIT on Monday, December 11, 2006.  Under SEC Rule 14a-6, December 11, 2006, is the first date that Defendants can file a definitive Consent Solicitation statement and mail the definitive statement and consent cards to shareholders.

9.    Moreover, even if the REIT's Declaration of Trust and Bylaws permitted the members of the Board to be removed from office by written consent, Hartman's Consent Solicitation Statement contains other material misstatements and omissions in violation of SEC Rule 14a-9.

10.    Finally, on information and belief, prior to the filing of the Consent Solicitation Statement, Hartman has engaged in other conduct as part of his scheme to remove the Board of Trustees which also violated the federal securities laws.

11.    By this action, the REIT seeks an injunction preventing Hartman and Hartman Management from disseminating their Consent Solicitation Statement to the REIT's shareholders, preventing Hartman and Hartman Management from making any additional

3

material misstatements or omissions to shareholders, preventing Hartman and Hartman Management from proceeding with their Consent Solicitation Statement in violation of SEC Rules 14a-3 and 14a-9, or taking any other action to unlawfully remove the Board of the REIT.

## BACKGROUND

12.     The factual allegations supporting Plaintiff's Application for Temporary Restraining Order are contained in the Affidavit of James C. Mastandrea which is attached as Exhibit 1.

13.     The REIT was formed in 2004 under the Maryland real estate investment trust statute for the purpose of investing in commercial real estate. The REIT, through Hartman REIT Operating Partnership, L.P., owns 36 office, office/industrial, and retail properties in Texas. The REIT has approximately 750 tenants in those 36 properties.

14.     As of December 4, 2006, the REIT had approximately 9,896,551 shares of beneficial interest (the Maryland REIT equivalent of common stock) outstanding owned by approximately 1,300 beneficial owners. The REIT's shares are not listed on a public stock exchange, but the REIT's shares are registered under Section 12(g) of the Exchange Act and the REIT files annual, quarterly, and current reports with the SEC and is otherwise subject to regulation by the SEC under the Exchange Act. Because the REIT's shares are registered under the Exchange Act, any proxy or consent solicitation involving the REIT's shares is subject to the provisions of the Exchange Act, including, without limitation, Section 14 and Regulation 14a (the "Proxy Rules").

15.     On October 2, 2006, the Board of Trustees of the REIT removed Hartman as Chairman and CEO of the REIT and discontinued the REIT's relationship with Hartman

funds, and requiring Hartman to turn over the REIT's books and records. Copies of the state court injunctions issued by the Harris County District Court are attached as Collective Exhibit A.

### Hartman's Filing of a False and Misleading Consent Solicitation Statement

19. Following his failed efforts to maintain control of the REIT, Hartman is now attempting to replace the Board of Trustees that terminated Hartman with a new slate of Trustees consisting of Hartman and five other individuals hand-picked by Hartman. Despite the fact that Hartman just resigned from the Board on October 27, 2006, Hartman is now seeking to be reinstated.

20. On November 29, 2006, Hartman and Hartman Management filed a preliminary Consent Solicitation Statement with the SEC providing notice of Hartman's attempt to solicit written consents from shareholders to vote their shares to remove without cause the REIT's current Board of Trustees and to replace that Board with a new slate of Trustees. A copy of the preliminary Consent Solicitation Statement is attached as Exhibit B.

21. However, Hartman's attempt to replace the Board by means of written consent of shareholders violates the REIT's Declaration of Trust, which is the equivalent of a corporation's articles of incorporation, and the REIT's Bylaws. A copy of the Declaration of Trust is attached as Exhibit C. A copy of the REIT's Bylaws is attached as Exhibit D.

22. Section 8.7 of the Declaration plainly provides that a "Trustee may be removed from office with or without cause <u>only at a meeting of the Shareholders called for that purpose</u> . . . ." (emphasis added).

23. Hartman's attempt to remove Trustees by merely obtaining the written consents of Shareholders, and without a meeting of Shareholders called for the purpose of removing Trustees, thus directly violates Section 8.7 of the Declaration.

24. Prior to December 2, 2006, Article II, Section 13 of the REIT's Bylaws had provided that "any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting if a consent in writing, setting forth such action, is signed by shareholders entitled to cast a sufficient number of votes to approve the matter, as required by statute, the Declaration of Trust or these Bylaws, and such consent is filed with the minutes of proceedings of the shareholders."

25. This bylaw was not sufficient, however, to override the specific provision of the Declaration of Trust providing that a Trustee can only be removed at a meeting of shareholders called for that purpose.

26. In order to remove any perceived discrepancy between the Declaration and the Bylaws, the Board, on December 2, 2006, repealed Article II, Section 13 of the Bylaws. Thus, it is clear that the Trustees may not be removed simply by obtaining written consents from shareholders. Consequently, if the Consent Solicitation Statement were sent now, it would be misleading in that it leads shareholders to believe that removal of a Trustee may be accomplished by written consent.

27. Moreover, Hartman's Consent Solicitation Statement filed with the SEC and distributed to certain shareholders states that if a majority of the shares outstanding on the record date votes in favor of the measure, then the measure will pass. However, pursuant to the actions taken by the Board of Trustees on December 2, 2006, the REIT is now subject to Section 3-804(a) of the Maryland General Corporation Law, which provides that a REIT's shareholders may remove a member of the Board only by the affirmative vote of at least two-thirds of all the votes entitled to be cast by the shareholders generally in the election of directors. A copy of the

Articles Supplementary amending the Declaration of Trust and the Amendments to the Bylaws are attached hereto collectively as Exhibit E.

28.    Based on the December 2, 2006 Amendment to the Bylaws, Hartman's attempt to exploit Article II, Section 13 of the Bylaws in an effort to circumvent the requirements of Section 8.7 of the Declaration is futile.  Similarly, the December 2, 2006 Amendment to the Articles of Incorporation, requiring at least a two-thirds affirmative vote to remove a Board member, renders false Hartman's claim in the Consent Solicitation Statement that only a majority affirmative vote is necessary to remove a member of the Board.

29.    On December 4, 2006, Hartman and Hartman Management filed additional materials with the Securities and Exchange Commission (the "Additional Materials") consisting (amazingly) of Hartman and Hartman Management's Counterclaim and Supplemental Answer filed in the Harris County District Court litigation.  A copy of Additional Materials is attached as Exhibit F.

### Hartman's Unlawful Campaign to Solicit Proxies

30.    Despite the futility of Hartman's efforts to remove the Board members through written consents, Hartman has refused the REIT's demand to cease and desist the consent solicitation.  On December 6, 2006, the REIT's counsel sent a letter to Hartman's counsel requesting Hartman to refrain from further publication of the Consent Solicitation Statement. Hartman has failed to respond to this request.

31.    Furthermore, since the preliminary Consent Solicitation Statement and Additional Materials was filed with the SEC on November 29, 2006, Hartman has been calling the REIT's shareholders, distributing the preliminary Consent Solicitation Statement and Additional Materials to the REIT's shareholders, and conducting meetings with the REIT's shareholders and

brokers encouraging them to support the measure despite the fact that the Consent Solicitation Statement is futile and contains material misstatements and omissions.

32. Hartman's proposed Consent Solicitation Statement contains numerous misstatements of material fact regarding the ability of Hartman to accomplish the removal of the Trustees merely through written consents. Most notably, Hartman has failed to amend the Consent Solicitation Statement and Additional Materials to notify shareholders of the futility of the solicitation. The Consent Solicitation Statement also contain numerous other material misstatements and omissions in violation of the Proxy Rules.

33. SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 proscribes misstatements or omissions of material fact in proxy statements. The Rule provides, in relevant part, that:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 CFR § 240.14a-9.

34. An omission is considered material under Rule 14a-9 if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the "total mix" of information made available.

35. If the Consent Solicitation Statement is mailed to shareholders on Monday, December 11, 2006, it will be false and misleading at its core because it claims that the members of the Board of the REIT may be removed by submissions of written consents by the holders of a majority of the outstanding shares of the REIT. As discussed above, the members of the Board may be removed only at a shareholders meeting called for that purpose and then only by the

affirmative vote of at least two-thirds of the shares entitled to vote at the meeting. Insofar as no special meeting of shareholders has been called for the purposes of removing the current Board of Trustees, the Consent Solicitation Statement clearly misleads shareholders regarding their ability to remove and replace members of the Board.

**Other Factual Misrepresentations in Hartman's Consent Solicitation Statement and Additional Materials**

36.     The Consent Solicitation Statement also contains numerous other misstatements and omissions. Page 12 of the Consent Solicitation Statement incorrectly states that Hartman Management was terminated without cause in November 2006. In fact, Hartman Management was terminated for cause at the October 2, 2006 Board meeting. The termination was confirmed by letter from the Board to Hartman Management dated October 12, 2006.

37.     In an attempt to discredit James C. Mastandrea, who, on October 2, 2006, was appointed by the Board of Trustees to replace Hartman as interim CEO of the REIT, the Consent Solicitation Statement contains numerous misstatements regarding Mastandrea's past business dealings.

38.     First, the Consent Solicitation Statement asserts on Page 7 that, under Mastandrea's stewardship, the market value of the stock of Paragon Real Estate Equity and Investment Trust, with which Mastandrea is affiliated, "declined precipitously" from a high of $27.75 during the week of June 9, 2003, to a low of $0.51 on November 21, 2006. This statement is inaccurate. The price of Paragon's stock traded in the $0.15 per share range on the American Stock Exchange when Mastandrea became CEO of Paragon in March 2003 and has not remotely approached $27.75 during the last three and a half years. Furthermore, Hartman's characterization of the performance of Paragon omits key facts that a reasonable investor would

10

consider material in evaluating Mastandrea's proficiency as a real estate executive, such as significant changes in Paragon's business model over the intervening years.

39.     Second, the Consent Solicitation Statement questions whether Mastandrea is breaching fiduciary duties to Paragon by working for the REIT even though, as the Consent Solicitation Statement admits, Mastandrea is "no longer required under [his] employment agreement[] to work exclusively for Paragon."

40.     Third, the Consent Solicitation Statement questions whether Mastandrea can "effectively serve as the President and CEO of two public companies located in distant locations at the same time" without noting that Mastandrea's responsibilities at Paragon are minimal in light of the fact that Paragon is a corporate shell that currently owns no real estate and has little cash, and no operations.

41.     Fourth, the Consent Solicitation Statement incorrectly states that Paragon's decision to de-list its securities was due to "Paragon's failed strategy at being a successful public company."  In fact, Paragon's stock was delisted by the American Stock Exchange due to consecutive years of operating losses going back five years before Mastandrea was affiliated with Paragon and because Paragon failed to meet the listing requirements at and before the time Mastandrea became involved.

42.     Hartman fails to disclose that the line of credit necessary for the REIT's operations contains a change of control provision which could be invoked if Hartman regains control of the REIT.  Before voting on the removal of Trustees, the shareholders should be advised of this risk.

43.     Defendants' Consent Solicitation Statement includes a strategy description that involves a rolling-up of Defendant Hartman Management into the REIT.  Defendants' fail to

11

disclose that the roll-up is unnecessary because the REIT is already self-administered. Defendants also fail to disclose their intention to charge many millions of dollars to the REIT for this unnecessary roll-up. Indeed, when Hartman was CEO of the REIT, he demanded $10 million for this unnecessary transaction.

44.     In addition, Hartman claims in the Consent Solicitation Statement that he "has a substantial congruency of interest with the other shareholders to maximize the long-term value of the Shares." However, Hartman has failed to disclose his numerous conflicts of interest and the fact that Hartman and Hartman Management will benefit in materially different ways from the other shareholders if the Consent Solicitation Statement is successful.

45.     For example, Hartman fails to disclose that, subsequent to Hartman's removal as CEO, the REIT has made demand for repayment of a $3.45 million dollar inter-company loan approved by Hartman from the REIT to Houston R.E. Income Properties XIV, a partnership controlled by Hartman. The principal balance of this loan is payable on demand.

46.     On October 26, 2006, the REIT demanded immediate payment of the principal balance. On November 7, 2006, Hartman's then legal counsel agreed that Hartman Management would pay the demand note and asked that the REIT provide wire transfer instructions for making the payment. Hartman subsequently reneged on this agreement and has not repaid the demand note to the REIT.

47.     Furthermore, the Consent Solicitation Statement fails to disclose that, Hartman's legal counsel moved to withdraw from representation of Hartman and Hartman Management in the state court lawsuit.

48.     Hartman also does not disclose that, if the Consent Solicitation Statement is successful, Hartman presumably will dismiss the lawsuit filed by the REIT against Hartman and

Hartman Management for breach of fiduciary duties and contractual obligations. The lawsuit alleges serious acts of self-dealing and misconduct on Hartman's part, and such allegations are unlikely to be pursued if Hartman regains control of the REIT.

49.     In addition, Hartman fails to disclose the declining occupancy rates of the REIT's properties over the past three (3) years and the significant employee turnover at Hartman Management.

50.     Finally, Hartman incredibly attaches his counterclaim to the Additional Materials in essence adopting the allegations therein as fact despite the fact the counterclaim contains inflammatory headings such as "The Roots of the Nefarious Civil Conspiracy," James C. Mastandrea's Legacy of Personally Lucrative, But Failed, Business Strategies," and "The Paragon Train Wreck." The counterclaim also contains many additional factual misstatements.

51.     Hartman also fails to disclose that Hartman has significant interests in certain limited partnerships and that, if Hartman regains control of the REIT, he intends to roll-up those limited partnerships into the REIT, at significant personal gain to Hartman.

52.     The numerous misstatements and omissions by Hartman and Hartman Management in the Consent Solicitation Statement and Additional Materials are in direct violation of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder, and have the potential to cause substantial, immediate, and irreparable harm to the REIT and its shareholders.

**Unlawful Solicitation of Shareholders Prior to Filing of Consent Solicitation**

53.     Even prior to filing the Consent Solicitation Statement, upon information and belief, Hartman contacted dozens of REIT shareholders and securities broker-dealers who have relationships with the REIT's shareholders by telephone and in person to communicate his plan to replace the current Board of the REIT and to request the shareholders' support in that effort.

54.     SEC Rule 14a-3 17 C.F.R. § 240.14a-3 provides that:

No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with a publicly-filed preliminary or definitive written proxy statement containing the information specified in Schedule 14A (§ 240.14a-101) or with a preliminary or definitive written proxy statement included in a registration statement filed under the Securities Act of 1933. . . .

17 CFR § 240.14a-3.

55.     Courts have liberally interpreted the definition of "solicitation" to include any communications reasonably calculated to affect a reasonable shareholder's voting decision.

56.     Hartman's communications with shareholders requesting the shareholders to support Hartman's efforts to replace the current Board with a new Board chosen by Hartman constitute communications reasonably calculated to affect a reasonable shareholder's voting decision in violation of Rule 14a-3.

57.     In order to remedy these violations of Rule 14a-3, the Court should impose a "cooling-off period" to prevent Hartman from communicating with shareholders.

## COUNT ONE
### Application for Temporary Restraining Order

58.     The REIT incorporates and realleges by reference the allegations contained in paragraphs 1 to 57 of the Complaint.

59.     Plaintiff seeks the issuance of a Temporary Restraining Order to prevent the issuance of materially misleading information in violation of the federal securities laws. For the reasons set out above and in the supporting Declaration, Plaintiff is likely to prevail on the merits. The relief requested herein will preserve the status quo because it will prevent the further issuance of false and misleading information.

60.     If the REIT's application for a temporary restraining order is not granted, harm to the REIT and its shareholders is imminent and irreparable. The dissemination of the false and misleading information in Hartman's Consent Solicitation would misinform the shareholders regarding the effect of the written consents. The false and misleading information would also prevent shareholders from making informed decisions regarding the management of the REIT because Hartman's Consent Solicitations and Additional Materials contain false information about the REIT's current management and fail to disclose material information about Hartman. If the Defendants continue to solicit shareholders before providing them with accurate, pertinent information, and, based on such failures of the Defendants, the shareholders make an uninformed decision regarding the replacement of the members of the Board, the REIT and its shareholders will suffer irreparable harm.

61.     The harm that will result if the temporary restraining order is not issued is irreparable and there is no adequate remedy at law for the harm because it would be impossible to compensate with money damages the effect of the dissemination of the false and misleading information. No amount of money can compensate the shareholders of the REIT or the REIT for the circulation of information that prevents shareholders from making informed decisions regarding the management of the REIT.

62.     Plaintiff is willing to post a bond in appropriate amount.

63.     Given the harm that that will occur if an injunction is not immediately issued, Plaintiff respectfully requests that the Court issue a Temporary Restraining Order restraining Defendants Hartman and Hartman Management from:

> (a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 4, 2006;

(b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and

(c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

## COUNT TWO
### Preliminary and Permanent Injunctive Relief pursuant to 15 U.S.C § 78n(a) and 17 C.F.R. § 240.14a-9

64. The REIT incorporates and realleges by reference the allegations contained in paragraphs 1 to 63 of the Complaint.

65. Defendant Hartman and Hartman Management's material misstatements and omissions, as set forth above, violate Section 14(a) of the Exchange Act and SEC Rule 14a-9. If Defendants' statements are not corrected and an appropriate "cooling-off" period ordered, the REIT's shareholders will be deprived of the full and accurate information to which they are entitled and, thus, will be irreparably harmed.

66. The REIT has no adequate remedy at law.

67. Accordingly, Plaintiffs are entitled to a preliminary and permanent injunction preventing Hartman and Hartman Management from:

(a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 1, 2006;

(b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and

(c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

(d) engaging in any communications with shareholders designed to solicit proxies or consents or to otherwise remove any members of the Board of Trustees of the REIT;

(e) making any filing with the Securities and Exchange Commission respecting the REIT.

## COUNT THREE
### Preliminary and Permanent Injunctive Relief pursuant 15 U.S.C § 78n(a) and 17 C.F.R. § 240.14a-3

68.     The REIT incorporates and realleges by reference the allegations contained in paragraphs 1 to 67 of the Complaint.

69.     Hartman's and Hartman Management's communications with shareholders requesting the shareholders to support their efforts to replace the current Board with a new Board chosen by Hartman constitute communications reasonably calculated to affect a reasonable shareholder's voting decision in violation of Rule 14a-3. If Hartman and Hartman Management are not enjoined from further unlawful contact with shareholders and an appropriate "cooling-off" period ordered, Hartman and Hartman Management will continue to engage in communications in violation of law and the REIT will be irreparably harmed.

70.     The REIT has no adequate remedy at law.

71.     Accordingly, the REIT is entitled to a preliminary and permanent injunction enjoining Hartman and Hartman Management from:

(a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 1, 2006;

(b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and

17

(c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

(d) engaging in any communications with shareholders designed to solicit proxies or consents or to otherwise remove any members of the Board of Trustees of the REIT;

(e) making any filing with the Securities and Exchange Commission respecting the REIT.

## PRAYER FOR RELIEF

WHEREFORE, the REIT respectfully prays that the Court:

1.      Cite Defendants to appear and answer herein;

2.      Issue a Temporary Restraining Order restraining Defendants Hartman and Hartman Management from:

> (a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 4, 2006;
>
> (b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and
>
> (c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

3.      Issue a preliminary and permanent injunction preventing Hartman and Hartman Management from:

> (a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 1, 2006;
>
> (b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and

(c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

(d) engaging in any communications with shareholders designed to solicit proxies or consents or to otherwise remove any members of the Board of Trustees of the REIT;

(e) making any filing with the Securities and Exchange Commission respecting the REIT.

4.  Issue a preliminary and permanent injunction enjoining Hartman and Hartman Management from:

(a) further disseminating in any manner the Consent Solicitation filed with the Securities and Exchange Commission on November 29, 2006 and the Additional Materials filed with the Securities and Exchange Commission on or about December 1, 2006;

(b) making any additional material misstatements or omissions in connection with, or otherwise related to, the Consent Solicitation; and

(c) making any proxy solicitation of the REIT's shareholders in connection with the Consent Solicitation.

(d) engaging in any communications with shareholders designed to solicit proxies or consents or to otherwise remove any members of the Board of Trustees of the REIT;

(e) making any filing with the Securities and Exchange Commission respecting the REIT.

5.  Award judgment in favor of the REIT against Hartman and Hartman Management for all amounts allowable under law for attorneys' fees and court costs;

6.  Tax the court costs and discretionary costs of this action to Hartman and Hartman Management; and

7.  Award such other, further, and general relief as the Court may deem proper and the circumstances may require.

Respectfully submitted,

KING & SPALDING LLP

_____
Mark K. Glasser
Texas Bar No. 08014500
1100 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 751-3200 (Telephone)
(713) 751-3290 (Facsimile)

ATTORNEYS FOR HARTMAN COMMERCIAL
PROPERTIES REIT

OF COUNSEL:

KING & SPALDING LLP
Penn C. Huston
Texas Bar No. 00796804
Alissa B. Rubin
State Bar No. 24037404
1100 Louisiana, Suite 4000
Houston, Texas 77002
(713) 751-3200 (Telephone)
(713) 751-3290 (Facsimile)

BASS, BERRY & SIMS PLC
Overton Thompson III
Brian D. Roark
AmSouth Center, Suite 2700
315 Deaderick Street
Nashville, TN 37238-3001
Telephone: (615) 742-6200
Facsimile: (615) 742-2804

Tab 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HARTMAN COMMERCIAL PROPERTIES REIT, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. _____ |
| ALLEN R. HARTMAN and HARTMAN MANAGEMENT, L.P., | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JAMES C. MASTANDREA

STATE OF TEXAS      §
                              §
COUNTY OF HARRIS   §

1.      I, James C. Mastandrea, am over the age of twenty-one and am competent to make this Declaration.  I am making this Declaration in support of Hartman Commercial Properties REIT's (the "REIT") application for a temporary restraining order in the above-styled case.  The facts set forth in this Declaration are based on my personal knowledge and on the documents attached hereto and are true and correct.  The REIT is willing to post a bond.

2.      I am currently the interim Chief Executive Officer and Chairman of the Board of Trustees of Hartman Commercial Properties REIT.

3.      I have served as member of the REIT's Board of Trustees since July 5, 2006. I am Chairman of the Investment Committee and a member of the Executive Committee, the Audit Committee, and the Compensation Committee.  I have more than 25 years of experience in developing, acquiring, owning, managing, and repositioning commercial real estate with 13 years of experience with public companies.

4.      The REIT was formed in 2004 under the Maryland real estate investment trust statute. The REIT, through Hartman REIT Operating Partnership, L.P., owns 36 office, office/industrial, and retail properties in Texas. The REIT has approximately 750 tenants in those 36 properties.

5.      As of December 4, 2006, the REIT had approximately 9,896,551 shares of beneficial interest outstanding owned by approximately 1,300 beneficial owners. The REIT's shares are not listed on a public stock exchange, but the REIT's shares are registered with the Securities and Exchange Commission ("SEC"), and the REIT files annual, quarterly, and current reports with the SEC.

6.      On October 2, 2006, the Board of Trustees of the REIT removed Allen R. Hartman ("Hartman") as Chairman and CEO of the REIT and discontinued the REIT's relationship with Hartman Management, L.P. ("Hartman Management") which previously had administered and operated the REIT. Subsequently, Hartman resigned as a Trustee of the Board of Trustees of the REIT.

7.      The Board removed Hartman as Chairman and CEO and discontinued its relationship with Hartman Management after concluding that Hartman failed to disclose commissions received by Hartman Management in connection with real estate transactions negotiated on behalf of the REIT; acquired and leased real estate on behalf of the REIT without a real estate license; failed to disclose litigation against Hartman arising out of sales of shares in the REIT; perpetuated various conflicts of interest; purchased shares of the REIT from a shareholder at less than half the price at which the REIT was then offering to sell shares to the public without disclosing this fact to the Board; failed to follow Board directives; and threatened and attempted to intimidate the Board. In addition, the REIT's properties had been performing

2

poorly, and Hartman Management had experienced a high rate of employee turnover in recent times.

8.      Following his termination, Hartman refused to relinquish control of the REIT. He refused to deliver the documents and bank accounts necessary to operate the REIT. He also refused to provide the keys to the REIT's properties. Copies of the state court injunctions that the REIT sought, and that a Harris County District Court issued, requiring Hartman to cede control of REIT bank accounts and funds and to turn over the REIT's books and records are attached as Collective Exhibit A.

9.      On November 29, 2006, Hartman and Hartman Management filed a preliminary Consent Solicitation Statement with the SEC providing notice of Hartman's attempt to solicit written consents from shareholders to vote their shares to remove without cause the REIT's current Board of Trustees and to replace that Board with a new slate of Trustees. A copy of the preliminary Consent Solicitation Statement is attached as Exhibit B.

10.      Hartman's attempt to replace the Board by means of written consent of shareholders violates Section 8.7 of the REIT's Declaration of Trust. A copy of the Declaration of Trust is attached as Exhibit C. Section 8.7 provides that a "Trustee may be removed from office with or without cause only at a meeting of the Shareholders called for that purpose . . . ."

11.      Hartman's attempt to replace the Board by means of written consent of shareholders also violates the REIT's Bylaws. A copy of the REIT's Bylaws is attached as Exhibit D. Prior to December 2, 2006, the REIT's Bylaws had provided that "any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting if a consent in writing, setting forth such action, is signed by shareholders entitled to cast a sufficient number of votes to approve the matter, as required by statute, the Declaration of Trust

3

or these Bylaws, and such consent is filed with the minutes of proceedings of the shareholders." In order to remove any discrepancy between the Declaration and the Bylaws, the Board, on December 2, 2006, repealed this provision.

12.     On December 2, 2006, the Board of Trustees of the REIT also supplemented the REIT's Declaration of Trust and amended its Bylaws to provide that the REIT's shareholders may remove a member of the Board only by the affirmative vote of at least *two-thirds* of all the votes entitled to be cast by the shareholders generally in the election of directors.  A copy of the Articles Supplementary amending the Declaration of Trust and the Amendments to the Bylaws are attached hereto collectively as Exhibit E.  The Consent Solicitation Statement that Hartman and Hartman Management filed with the SEC states that if a *majority* of the shares outstanding on the record date votes in favor of the measure, then the measure will pass.

13.     On December 4, 2006, Hartman and Hartman Management filed additional materials with the SEC consisting of Hartman and Hartman Management's Counterclaim and Supplemental Answer filed in the Harris County District Court litigation.  A copy of the Additional Materials is attached as Exhibit F.

14.     Hartman has refused the REIT's demand to cease and desist the consent solicitation.  The REIT's counsel sent a letter to Hartman's counsel requesting Hartman to refrain from further publication of the Consent Solicitation Statement.  Hartman has failed to respond to this request.

15.     Furthermore, on information and belief, since the preliminary Consent Solicitation Statement was filed with the SEC on November 29, 2006, Hartman has been calling the REIT's shareholders, distributing the preliminary Consent Solicitation Statement and the

Additional Materials to the REIT's shareholders, and conducting meetings with the REIT's shareholders and brokers encouraging them to support the measure.

16.     No special meeting of shareholders has been called for the purposes of removing the current Board of Trustees.

17.     The Consent Solicitation Statement and the Additional Materials contain numerous other misstatements and omissions.  Page 12 of the Consent Solicitation Statement states that Hartman Management was terminated without cause in November 2006.  This is incorrect.  Hartman Management was terminated for cause at the October 2, 2006 Board meeting.  The termination was confirmed by letter from the Board to Hartman Management dated October 12, 2006.

18.     The Consent Solicitation Statement also contains numerous misstatements about my own past business dealings.  First, the Consent Solicitation Statement asserts on Page 7 that, under my stewardship, the market value of the stock of Paragon Real Estate Equity and Investment Trust declined from a high price of $27.75 during the week of June 9, 2003, to a low of $0.51 on November 21, 2006.  This statement is inaccurate.  The price of Paragon's stock traded in the $0.15 per share range on the American Stock Exchange when I became CEO of Paragon in March 2003.  It has not even remotely approached $27.75 per share since that time. Hartman's characterization of the performance of Paragon also omits key facts related to my proficiency as a real estate executive, such as significant changes in Paragon's business model over the intervening years.

19.     Second, Hartman fails to disclose that the line of credit necessary for the REIT's operations contains a change of control provision which could be invoked if Hartman regains

5

control of the REIT. Before voting on the removal of Trustees, the shareholders should be advised of this risk.

20. Third, Defendants' Consent Solicitation Statement includes a strategy description that involves a rolling-up of Defendant Hartman Management into the REIT. Defendants' fail to disclose that the roll-up is unnecessary because the REIT is already self-administered. Defendants also fail to disclose their intention to charge many millions of dollars to the REIT for this unnecessary roll-up. Indeed, when Hartman was CEO of the REIT, he demanded $10 million for this unnecessary transaction.

21. Fourth, the Consent Solicitation Statement questions whether I am breaching fiduciary duties to Paragon by working for the REIT. As the Consent Solicitation Statement admits, however, I am no longer required under my employment agreement to work exclusively for Paragon.

22. Fifth, the Consent Solicitation Statement questions whether I can "effectively serve as the President and CEO of two public companies located in distant locations at the same time." My responsibilities at Paragon, however, are minimal. Paragon is a corporate shell that currently owns no real estate and has little cash, and no operations.

23. Sixth, the Consent Solicitation Statement incorrectly states that Paragon's decision to de-list its securities was due to "Paragon's failed strategy at being a successful public company." In fact, Paragon's stock was delisted by the American Stock Exchange due to consecutive years of operating losses going back five years before I became affiliated with Paragon and because Paragon failed to meet the listing requirements at and before the time I became involved.

6

24.     In addition, Hartman has failed to disclose that, subsequent to Hartman's removal as CEO, the REIT has made demand for repayment of a $3.45 million dollar inter-company loan approved by Hartman from the REIT to Houston R.E. Income Properties XIV, a partnership controlled by Hartman. On October 26, 2006, the REIT demanded immediate payment of the principal balance. On November 7, 2006, Hartman's then legal counsel agreed that Hartman Management would pay the demand note and asked that the REIT provide wire transfer instructions for making the payment. Hartman has not repaid the demand note to the REIT.

25.     Hartman has also failed to disclose the declining occupancy rates of the REIT's properties over the past three years and the significant employee turnover at Hartman Management.

26.     Finally, Hartman attaches his counterclaim to the Additional Materials in essence adopting the allegations therein as fact despite the fact that the counterclaim contains inflammatory headings such as "The Roots of the Nefarious Civil Conspiracy," "James C. Mastandrea's Legacy of Personally Lucrative, But Failed, Business Strategies," and "The Paragon Train Wreck." The counterclaim also contains many additional factual misstatements.

27.     On information and belief, prior to filing the Consent Solicitation Statement, Hartman contacted dozens of REIT shareholders and securities broker-dealers who have relationships with the REIT's shareholders by telephone and in person to communicate his plan to replace the current Board of the REIT and to request the shareholders' support in that effort.

28.     If the REIT's application for a temporary restraining order is not granted, harm to the REIT and its shareholders is imminent and irreparable. The dissemination of the false and misleading information in Hartman's Consent Solicitation would misinform the shareholders regarding the effect of the written consents. The false and misleading information would also

prevent shareholders from making informed decisions regarding the management of the REIT because Hartman's Consent Solicitation contains false information about the REIT's current management and fails to disclose material information about Hartman. If the Defendants continue to solicit shareholders before providing them with accurate, pertinent information, and, based on such failures of the Defendants, the shareholders make an uninformed decision regarding the replacement of the members of the Board, the REIT and its shareholders will suffer irreparable harm.

29. The harm that will result if the temporary restraining order is not issued is irreparable and there is no adequate remedy at law for the harm because it would be impossible to compensate with money damages the effect of the dissemination of the false and misleading information. No amount of money can compensate the shareholders of the REIT or the REIT for the circulation of information that prevents shareholders from making informed decisions regarding the management of the REIT.

I declare under penalty of perjury that the foregoing is true and correct.

James C. Mastandrea

SUBSCRIBED AND SWORN TO BEFORE ME on the 7th day of December 2006, to certify which witness my hand and official seal.

[Seal]

**MARIA S. ROMO**
Notary Public, State of Texas
My Commission Expires
May 27, 2008

Notary Public in and for
The State of Texas

5-27-08

My Commission Expires

Tab A

CAUSE NO. 2006-63041

| | | |
|---|---|---|
| HARTMAN COMMERCIAL | § | IN THE DISTRICT COURT OF |
| PROPERTIES REIT and HARTMAN REIT | § | |
| OPERATING PARTNERSHIP, L.P., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALLEN R. HARTMAN and HARTMAN | § | |
| MANAGEMENT, L.P., | § | |
| | § | |
| Defendants. | § | 333rd JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER AND
## ORDER SETTING HEARING FOR PRELIMINARY INJUNCTION

After considering Plaintiffs' Application for Temporary Restraining Order, the pleadings, the affidavits of James C. Mastandrea, Chris A. Minton, and John Dee, and arguments of counsel, the Court finds that there is evidence that harm is imminent to Plaintiff, and that if the Court does not issue the Temporary Restraining Order, Plaintiff will be irreparably injured. Specifically, the Court makes the following findings:

Hartman Commercial Properties REIT was formed in 2004 for the purpose of investing in commercial real estate. The REIT owns all of its interests in real estate through Hartman REIT Operating Partnership, L.P. (the "Operating Partnership"). Hartman Commercial Properties REIT and Hartman REIT Operating Partnership, L.P. are collectively referred to herein as the "REIT".

Two Agreements are pertinent here. One is an Advisory Agreement dated as of August 31, 2004 (the "Advisory Agreement"). The other is a Property Management Agreement dated as of September 1, 2004 (the "Management Agreement").

The Advisory Agreement appointed Hartman Management as the REIT's advisor and asset manager to, among other things, provide the daily management of the REIT and perform

and supervise the various administrative functions reasonably necessary for the management of the REIT.

The Advisory Agreement provides that it shall continue for successive one-year renewals upon mutual consent of the parties. On August 14, 2006, the Board of Trustees decided not to extend the Agreement for another one-year term but instead to continue payments under the Agreement until September 30, 2006.

In addition to operating the REIT under the Advisory Agreement, Hartman Management also managed the properties owned by the REIT under a Management Agreement. The Management Agreement appointed Hartman Management as the agent for operating and leasing the properties owned by the REIT.

The REIT requested that Hartman Management transition to the REIT all services previously performed by Hartman Management for the REIT under the Advisory Agreement and the Management Agreement and provide to the REIT certain items and information, including a list of all property and cash accounts, copies of all leases, listings of all accounts receivable and accounts payable, and keys to the properties. Additionally, the REIT requested that Hartman Management pay over to the REIT all money held for the account of the REIT, deliver to the Board all assets and all documents of the REIT, and provide a full accounting of all moneys collected, paid, or held by Hartman Management on behalf of the REIT.

It is probable that Plaintiffs will recover from Defendants after trial on the merits because it appears that Plaintiffs can present documents and testimony establishing that Defendants have withheld Plaintiffs' access to documents, information, and property owned by Plaintiffs.

If Plaintiff's application is not granted, harm is imminent because Hartman Management is refusing to provide the REIT access to the REIT's financial and operational information essential to conduct the REIT's business. Without this information, the REIT is unable to assemble its own financial statements or identify its own shareholders. The inability to oversee

its financial statements and communicate with its shareholders constitutes immediate and irreparable harm. Further, the REIT cannot obtain a list of and, therefore, cannot communicate with, all of its tenants or service providers. Additionally, because the REIT does not have sufficient information to determine the location of its bank accounts, which are under the exclusive control of the Defendant,, the REIT is unable to use its own funds to pay its employees, its service providers, and other expenses incurred in the ordinary course of its business. The inability to identify and communicate with its tenants and service providers and to use its own funds to pay its expenses constitutes immediate and irreparable harm.

The harm that will result if the temporary restraining order is not issued is irreparable and there is no adequate remedy at law for the harm because the harm includes depriving Plaintiffs of access to their personal property and because it would be impossible to calculate the losses suffered by the REIT if it cannot exercise control over its business. The harm is irreparable for the further reason that Defendants do not have the financial wherewithal to pay for the damages that they are inflicting upon the Plaintiffs.

Therefore, the Court orders that:

a.       Defendants Hartman and Hartman Management give the Board of Trustees of the REIT, or its designated representatives, immediate and continuing access to (during regular business hours) and the ability to copy all books and records belonging to the REIT and all books and records with respect to the Properties, including, but not limited to: all property and corporate bank accounts, all leases, all contracts of any kind entered into on behalf of or in connection with the operations of the REIT, keys to all properties owned by the REIT, all tax returns, all manual checks, on-line access YARDI and Skyline databases, general ledger and accounting records.

b.       Orders the clerk to issue notice to Defendants, Alan R. Hartman and Hartman Management, L.P., that the hearing on Plaintiff's Application for Temporary Injunction is set for October 20 _____, 2006, at 1:30 _____ [ a.m./p.m.] The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

c.       Bond is set at $500.00 (FIVE HUNDRED DOLLARS).

d.     Plaintiffs shall provide 12 hours written notice by fax or email to Defendant's counsel prior to entering any of the occupied properties.

This order expires on _October 23_____, 2006.

    SIGNED on _October 9,_____, 2006, at _1:30___ [a.m/ p.m.]

_____
**PRESIDING JUDGE**

F I L E D
CHARLES BACARISSE
District Clerk
OCT 2 0 2006
Harris County, Texas
By _____
Deputy

NO. 2006-63041

| | | |
|---|---|---|
| HARTMAN COMMERCIAL PROPERTIES REIT AND HARTMAN REIT OPERATING PARTNERSHIP, L.P., | § § § § | IN THE DISTRICT COURT OF |
| **Plaintiffs,** | § § | **HARRIS COUNTY, TEXAS** |
| ALLEN R. HARTMAN AND HARTMAN MANAGEMENT, L.P., | § § § | **333RD JUDICIAL DISTRICT** |
| **Defendants.** | § | |

## AGREED TEMPORARY INJUNCTION

It appears to the Court, as evidenced by the signatures of counsel, that the parties have reached an agreement as set forth below regarding certain matters that are the subject of Plaintiffs' First Supplemental Original Petition and Application for Temporary Restraining Order and Temporary Injunction, filed on October 6, 2006, which application for temporary injunction is currently set for a hearing on Friday, October 20, 2006 at 1:30 P.M.

It is therefore ORDERED, ADJUDGED AND DECREED, by agreement of the parties, as follows:

1.     The Parties have agreed that this Temporary Injunction shall be effective and enforceable without inclusion of factual findings;

2.     The parties agree that as of September 30, 2006, the Advisory Agreement entered into between the REIT and Hartman Management, dated as of August 31, 2004 (the "Advisory Agreement") is no longer in effect;

3.     Defendants Allen R. Hartman and Hartman Management, L.P. ("Hartman Management") shall no longer have any authority to act on behalf of, and shall not purport to act

on behalf of, Plaintiff Hartman Commercial Properties REIT (the "REIT") under the Advisory

Agreement;

4.     Defendants shall immediately transfer to the REIT the ownership and control of

all bank accounts maintained by Hartman Management in the name of the REIT or on the

REIT's behalf pursuant to the Advisory Agreement, including, without limitation, the following

accounts:

| Bank | Account No. | Name on Account |
|------|------------|-----------------|
| Capital One | 375-064-2344 | Hartman Commercial Properties REIT |
| Capital One | 375-064-2351 | Hartman Commercial Properties REIT—Money Market |
| Wells Fargo | 363-830-8845 | Hartman Commercial Properties REIT—DDA |
| Wells Fargo | 16479500 | Hartman Commercial Properties REIT—Escrow |

5.     At this time, Defendants are not required to transfer control of the following

accounts maintained by Hartman Management pursuant to the Amended and Restated Property

Management Agreement dated as of September 1, 2004 ("Property Management Agreement"),

which accounts shall hereafter, until further order of the Court, be used solely as set forth in

Section 2.3(i) of the Property Management Agreement:

| Bank | Account No. | Name on Account |
|------|------------|-----------------|
| Capital One | 382-041-5956 | Hartman REIT Operating Partnership Disbursement Account |
| Capital One | 375-064-1320 | Hartman REIT Operating Partnership, LP #1 |
| Capital One | 375-078-1357 | Hartman REIT Operating Partnership, LP #2 |
| Capital One | 382-078-1340 | Hartman REIT Operating Partnership, LP #3 |
| Capital One | 375-097-9092 | Hartman REIT Operating Partnership, LP #4 |
| Capital One | 375-099-2285 | Hartman REIT Operating Partnership, LP #5 |
| Capital One | 375-120-7428 | Hartman REIT Operating Partnership, LP #6 |
| Capital One | 370-002-6131 | Corporate Park Northwest |
| Capital One | 375-097-8771 | |

Until further order of the court, on or before 12:00 p.m. on each Monday, Defendants shall

tender to Plaintiffs by fax or hand delivery a ledger listing the transactions from the previous

week in the accounts identified in this paragraph, including identifying the payee on any cash,

check, or wire transfer disbursements.

6.     Defendants shall immediately transfer to the REIT the ownership and control of the line of credit maintained at Key Bank in the name of the REIT.  Defendants shall no longer have any authority to act on behalf of the REIT in connection with the Key Bank line of credit;

7.     As called for in the Advisory Agreement, Defendants shall deliver to the REIT the originals of all books and records of the REIT previously maintained by Hartman Management pursuant to the Advisory Agreement, including, but not limited to, tax returns, SEC filings and workpapers, audit workpapers, shareholder lists, unitholder lists, KeyBank loan agreement and statements, bills paid for services performed on behalf of the REIT, and American Stock Transfer & Trust Company statements and password(s).  Hartman Management is permitted to make and retain copies of such books and records at its own expense, but such copying shall not delay the delivery of documents to Plaintiffs beyond October 24, 2006;

8.     At this time, Defendants Hartman and Hartman Management shall maintain all books, records, and other documents required by the Property Management Agreement, and the Board of Trustees of the REIT, or its designated representatives, shall at all reasonable times (during regular business hours) have immediate and continuing access to and the right to audit, copy, and make independent examination of all such books, records, and other documents, including, but not limited to, all bank accounts, all leases, all contracts of any kind entered into on behalf of or in connection with the management of the REIT's properties, keys to all properties owned by the REIT, the YARDI and SKYLINE databases. and general ledger and accounting records; and

9.     All other matters, including the REIT's request for injunctive relief in connection with the REIT's notice of termination of Hartman Management's services under the Property Management Agreement, are reserved for later disposition.

10. By entering into this agreed temporary injunction, Plaintiffs and Defendants do not waive any of their rights, claims, causes of action, or remedies against each other, but expressly reserve all rights, claims, causes of action, and remedies, including any rights, claims, causes of action, and remedies, that are included in, or are affected by, this agreed temporary injunction.

Because this Temporary Injunction is entered into by agreement, it is ORDERED that Plaintiffs are not required to file a surety bond or cash deposit in lieu of bond in any amount.

It is ORDERED that the effective time and date of this Temporary Injunction is 9:55 a.m./p.m. on October 20, 2006.

It is ORDERED that the Clerk of the above-entitled Court shall forthwith issue a Temporary Injunction in conformity with the law and the terms of this Order.

Signed at 9:55 a.m. / p.m. on this the 20 day of October, 2006.

_____
Presiding Judge

APPROVED FOR ENTRY:

Mark K. Glasser
Penn C. Huston
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone:  (713) 751-3200
Facsimile:  (713) 751-3290

OF COUNSEL:
Overton Thompson III
Brian D. Roark
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, Tennessee 37238-3001
Telephone:  (615) 742-6200
Facsimile:  (615) 742-2804

*Attorneys for Plaintiffs*

Daniel W. Jackson
EMMONS & JACKSON, P.C.
3900 Essex Lane, Suite 1116
Houston, Texas 77027
Telephone:  (713) 552-4435
Facsimile:  (713) 527-8850

Patricia Jordaan
SBN 00784842
2626 Cole Avenue, Suite 850
Dallas, Texas  75204
(214) 468-8844
(214) 468-8845 - fax

*Attorney for Defendants*

6173142.1

CAUSE NO. 2006-63041

| | | |
|---|---|---|
| HARTMAN COMMERCIAL PROPERTIES REIT and HARTMAN REIT OPERATING PARTNERSHIP, L.P., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | HARRIS COUNTY, TEXAS |
| ALLEN R. HARTMAN and HARTMAN MANAGEMENT, L.P., | § § § § | |
| Defendants. | § § | 333rd JUDICIAL DISTRICT |

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of Imaging

**~~Agreed~~**
**TEMPORARY INJUNCTION**

On this day the Court considered Plaintiffs' request to enter a Temporary Injunction and

~~after considering the evidence, including the testimony of the Defendant,~~ the Court finds good *that*
*the parties have entered into an Agreed*
~~cause to enter a~~ Temporary Injunction and hereby Orders as follows:

The REIT was formed in 2004, and, through the Operating Partnership, owns 37 office,

office/industrial, and retail properties in Texas. The REIT has approximately 750 tenants in

those 37 properties.

Two agreements are pertinent here. One is an Advisory Agreement dated as of August

31, 2004 (the "Advisory Agreement"). The other is the Amended and Restated Property

Management Agreement dated as of September 1, 2004 (the "Property Management

Agreement").

The Advisory Agreement appointed Hartman Management as the REIT's advisor and

asset manager to, among other things, provide the daily management of the REIT and perform

and supervise the various administrative functions reasonably necessary for the management of

the REIT. Pursuant to the Advisory Agreement, Hartman Management was to perform its duties

consistent with the REIT's Declaration of Trust, which states that Hartman Management owes

fiduciary duties to the REIT.